## ATCHISON, T. & S. F. R. CO. et al. v. TRADERS COMPRESS CO.

### No. 2.

District Court, W. D. Oklahoma.
May 27, 1940.

Rainey, Flynn, Green & Anderson, W. R. Bleakmore, M. K. Cruce, and M. D. Green, all of Oklahoma City, Okl., for plaintiffs.

C. B. Cochran, of Oklahoma City, Okl., and A. L. Reed, of Dallas, Tex. (Ames, Cochran, Monnet, Hayes & Ames, all of Oklahoma City, Okl., and Callaway & Reed, of Dallas, Tex., on the brief), for defendant.

VAUGHT, District Judge.

The plaintiffs are railroad companies operating lines of railroad through Oklahoma City and various other Oklahoma cities.

The defendant owns and operates within the state of Oklahoma compresses for the concentration and compression of cotton to be shipped interstate and has plants or business houses at various towns and cities in Oklahoma.

The suit involves the right of plaintiffs to inspect certain records in the possession of the defendant with reference to the shipment of cotton from various points in the state of Oklahoma to the compresses of said defendant within the state of Oklahoma for the purpose of being compressed and then continued by transportation in interstate commerce.

Cotton growers in Oklahoma ship their cotton to the compress, usually consigned to themselves, for the purpose of having said cotton compressed and then the cotton is either sold by the consignees at the points where the compresses are located or shipped out of the state, either in the name of the original shipper or in the name of a purchaser of the cotton at the point of first destination.

The rates charged by the railroad companies are of two kinds. One is the local rate, fixed by the Interstate Commerce Commission, for shipment between points in Oklahoma and the second is a "floating in" rate, also fixed by the Interstate Commerce Commission, which is a much lower rate. When the floating in rate is charged, it is contemplated by the railroad company handling the original shipment that the shipment will be continued, after it leaves the compress, in interstate shipment to points at Memphis, Galveston, New Orleans and other out of the state markets,

and that thereafter the correct rate will be determined, taking into consideration the point of original shipment and the final destination, by proper adjustment so as to give the original shipper the benefit of the interstate rate.

In many instances, however, where the original shipper is charged by the railroad company a floating in rate and the original shipper disposes of the cotton at the point where the compress is located and no interstate shipment is had, the railroad company would be entitled to charge the local rate from the original point of shipment to the point of location of the compress, and to require the payment, by the shipper, of the difference between the two rates.

The plaintiffs allege that in many instances, because the original shipper has not kept the records required under the regulations of the Interstate Commerce Commission, the railroad companies have no records by which they can determine whether or not the original shipper was entitled to be charged a local rate or a floating in rate.

Plaintiffs allege that the compress company has records which will disclose whether said shipments were interstate or purely local and, therefore, whether the local or floating in rate would apply, and have asked permission of the defendant company to inspect its records for the purpose of securing information on behalf of the railroad companies which would enable them to determine the proper rate, whether local or interstate.

The defendant has refused to comply with the request of the plaintiffs on the grounds that the defendant is a purely independent corporation; that it does not buy or sell cotton and does not transport cotton either locally or in interstate commerce; that the business which the defendant does is that of compressing the cotton and preserving it for the accommodation and benefit of the original shipper; and, that the records it possesses are private and, therefore, it ought not to be required to disclose the information which it possesses, for the accommodation of the railroad companies, for the reason that the information might be extremely prejudicial to their customers, who had shipped cotton for the purpose of compressing.

The plaintiffs contend, however, that the compress performs an additional function in that it constitutes the link between the original shipment and the interstate shipment; that it acts in the same capacity as an elevator for wheat, stockyards for cattle and hogs, and a manufacturing plant which assembles raw material and manufactures it into finished material, in all of which cases there results interstate shipment.

The railroad companies, under the regulations of the Interstate Commerce Commission, are required to collect the correct rate. In other words, if it is an interstate shipment they are required to grant to the original shipper the floating in rate which gives to the shipper the benefit of an interstate rate, and on the other hand, if the shipment is a purely local shipment and does not become a part of an interstate shipment but is disposed of locally, then the railroad company is not only entitled, but is required to collect the local rate.

There is some contention, at least in the brief of the defendant, that it is the purpose of the plaintiffs to collect this additional rate from the purchaser of the cotton after the initial shipment is made.

It appears to the court, however, that that question is not involved in this case and this court is not required, under the pleadings, to determine from what source the additional rate, if any, should be collected. The sole question is, if the compress has the information which would enable the railroad companies to determine whether said shipment was a local or interstate shipment and the information showing the actual disposition of the cotton at the location of the compress, whether or not that information should be available to the railroad companies.

It is admitted by both the plaintiffs and the defendant that this exact question has not been determined by the courts, therefore, it is a case largely of first impression.

The court is of the opinion, however, that the defendant company is more than an independent institution; that its connection with the original shipper of the cotton by compressing and warehousing the cotton and shipping it out upon the order of the owner, as well as its connection with the transportation companies which transport the cotton from the compress in interstate commerce, gives to it a quasi connection with interstate commerce.

It could not prejudice the rights of the defendant to permit an inspection of its records by the railroad companies, except to displease those local shippers who had been given the benefit of the floating in rate when as a matter of fact their shipments were purely local and subject to the local rate.

The plaintiffs are entitled to the relief prayed for and judgment will be rendered accordingly. Findings of fact, conclusions of law, and a form of judgment, consistent with this opinion, may be submitted within ten days. An exception is allowed the defendant.